## COMMONWEALTH *vs.* RICHARD H. BRUSGULIS.

No. 92-P-1734.

Middlesex. March 6, 1995. - September 30, 1996.

Present: ARMSTRONG, PERRETTA, & SMITH, JJ.

*Assault with Intent to Rape. Evidence,* Testimony at prior proceeding, Descriptive words, Exculpatory.

At the trial of an indictment for assault with intent to rape, the evidence of intent to rape was sufficient to warrant the judge's denial of the defendant's motion for a required finding with respect to that element. [387-388]

At the retrial of an indictment for assault with intent to rape, the Commonwealth was properly allowed to introduce statements of the defendant at the first trial where the defendant's testimony at the first trial was not coerced and the portions introduced were unrelated to the evidence improperly admitted at the first trial that had led to the reversal of his conviction. [389-390]

Testimony of a police officer at a criminal trial was not improper opinion testimony, but rather it consisted of shorthand expressions of his observations. [390-391]

At a criminal trial the judge did not err in excluding evidence of other similar crimes in the same general location that occurred during a time when the defendant was incarcerated, where the judge was warranted in concluding that the incidents were so dissimilar as to have little probative value to show that someone other than the defendant had assaulted the victim. [391]

INDICTMENT found and returned in the Superior Court Department on April 3, 1986.

After review by the Supreme Judicial Court, 406 Mass. 501 (1990), the case was retried before *James D. McDaniel, Jr.,* J.

*Bernard Grossberg* for the defendant.

*David W. Cunis,* Assistant District Attorney (*Lincoln S. Jalelian,* Assistant District Attorney, with him) for the Commonwealth.

ARMSTRONG, J. The defendant appeals from a conviction

of assault with intent to rape. The conviction is his second for this offense. The previous conviction was reversed because, it was held, the judge erred in admitting in evidence, on the question of identification, detailed testimony concerning two prior incidents in which the defendant had been convicted of attempted rape or assault with intent to commit rape. See *Commonwealth* v. *Brusgulis*, 406 Mass. 501 (1990).

*Motion for required finding.* Although the identification of the perpetrator was vigorously contested at the trial, the defendant properly does not press that issue on appeal, the victim having identified the defendant as the perpetrator in two photographic arrays, a lineup, and a voice comparison. What he does contest, however, is the sufficiency of the evidence to show an intent to rape.

The evidence most favorable to the Commonwealth closely paralleled that described in the earlier *Brusgulis* appeal, 406 Mass. at 502, with the excision, of course, of the evidence of prior sexual crimes. The forty year old victim, a head nurse in the recovery room of a major Boston hospital, left her home in Watertown at 5:25 A.M. for her customary jog along the Charles River before going to work. It was December 18, 1985, still dark, and a light snow had fallen overnight. She was on a bike path between the river and a road leading from Watertown Square when she was assaulted. She had jogged to the crest of a hill when she was accosted by a large man she identified as the defendant. Without speaking, he grabbed her by the shoulders and threw her to the ground. He straddled her and several times smashed her head to the ground by pushing her shoulders down. She struggled vigorously and kept screaming. Cars coming from the square were passing nearby with illuminated headlights. The assailant ordered her to get up, saying, "You're coming with me," and attempted to drag her into a standing position and toward the river. She continued to resist vigorously, and he finally relented and ran off toward the square.

Arguing that the evidence fell short of showing an intent to rape, the defendant emphasizes that there was no evidence of a sexual touching, as in *Commonwealth* v. *Brattman*, 10 Mass. App. Ct. 579, 581 (1980), or of a stripping of clothing, as in *Commonwealth* v. *Thompson*, 116 Mass. 346, 347 (1874), *Commonwealth* v. *Freeman*, 352 Mass. 556, 558 (1967), and *Commonwealth* v. *Nickerson*, 388 Mass. 246, 252-254 (1983),

or of sexual remarks, as in *Commonwealth* v. *Bishop*, 9 Mass. App. Ct. 468, 469 (1980), *Commonwealth* v. *Rossi*, 19 Mass. App. Ct. 257, 258 (1985), and *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 752-753 (1986).

But the evidence here is similar in material respects to evidence held sufficient to show an intent to rape in *Commonwealth* v. *Derby*, 263 Mass. 39, 43-44 (1928) (woman pushed to ground by stranger, who dropped on top of her, refused offer of her pocketbook, and loosened his grip and fled when her cries attracted neighbors); *Commonwealth* v. *Corcoran*, 332 Mass. 615, 616-617 (1955) (young woman knocked to ground by stranger, who, from position astride her, hit her face several times, then fled when automobile headlights approached); and *Commonwealth* v. *Mahar*, 21 Mass. App. Ct. 307, 313-315 (1985) (woman grabbed by stranger, who forced her to ground face down, knelt astride her, cut her with knife in response to her continuous screams, and fled when her struggling succeeded in knocking him off balance). In none of those cases were sexual remarks or touchings made, nor was there a removal or attempted removal of clothing. In each of those cases, the female victim was assaulted, as here, in nighttime or twilight conditions, by a man who was a stranger, with no evidence of any prior argument, no evidence of intent to steal, and no evidence of mental illness. Lacking in this case is a factor common to the other three: desultory remarks immediately preceding the attack; but although this is a feature common to many sexual assaults by strangers, see *Commonwealth* v. *Mahar*, 21 Mass. App. Ct. at 314; *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. at 752, its absence is not by itself suggestive of some other motive for the attack. Of more significance logically are factors mentioned in *Commonwealth* v. *Brusgulis*, 406 Mass. at 507: an attack on a woman in a secluded area, an attempt to force her to a still more secluded area, threats or blows to quell the woman's resistance, and flight when something occurs to make the assailant fear discovery.[1]

The motion for a required finding with respect to the element of aggravation was properly denied.

---

[1] The earlier *Brusgulis* appeal discussed these as factors so common to sexual assaults on women as not to constitute distinctive similarities with the defendant's earlier sexual assaults. Had they been distinctive factors, the earlier sexual assaults might, in the judge's discretion, have qualified for admission on the issue of identity. In his earlier appeal, the defendant did

*Admission of defendant's first-trial statements.* The chief evidence against the defendant was the testimony of the victim, coupled with her identifications of the defendant as the assailant. Her testimony found some corroboration in testimony of investigating officers, who received a radio report of the attack shortly before 6:00 A.M. and proceeded immediately to the scene. There they found the victim's stocking hat in an area of disturbed snow just off the bike path, which they took to be the place of scuffle on the ground. In the new-fallen snow they could see the victim's small-size footprints ascending the hill to the area of disturbed snow and a set of large prints, consistent with workboots, that they took to be the assailant's. These they followed to the road and across to Beechwood Street, where the prints stopped at curbside in front of number 96. At that point, there were tire tracks which Officer Mullen said were consistent with having been made by a small car — roughly the same as his own Nissan Sentra, Mullen said. Officer Mullen measured the workboot footprints to those made by his own size ten boots. The assailant's foot was one or two sizes larger, Mullen surmised.

The Commonwealth was then permitted to introduce statements made by the defendant at the first trial (sanitized to conceal the facts that the defendant had been tried before and had testified therein) to the effect that he owned two pairs of construction workboots, that he wore them to work on occasions when his work called for him to be "in the field," that his shoe size was eleven and one half, and that the car he was driving at the time was a "Renault Reliance."[2] It was proper to admit those statements, *Commonwealth* v. *Johnson*, 372 Mass. 185, 193 (1977), and to allow their admission as part of the Commonwealth's case-in-chief, *Commonwealth* v. *Marley*, 396 Mass. 433, 441 (1985). See also *Commonwealth* v. *Sires*, 413 Mass. 292, 305 (1992).

The general rule permitting a defendant's testimony at a prior trial to be used against him at a later trial, *Commonwealth* v. *Johnson, supra* at 193, is subject to a limited exception applied in *Harrison* v. *United States*, 392 U.S. 219,

not raise, and the court did not discuss, the sufficiency of the evidence to show intent to rape.

[2]The attorneys and the judge assumed that the transcript of the earlier trial should have read "Renault Alliance" but opted not to correct the supposed error.

225-226 (1968). There, in the defendant's first trial, the government put the defendant's confession in evidence against him, and the defendant, who counsel had earlier represented would not testify, elected instead to take the stand to explain the circumstances and meaning of the confession. His conviction was reversed because the confession was held to have been coerced. At the second trial the confession was not admitted, but the government was permitted to introduce the testimony by which the defendant had sought to explain it, which included admissions that he was at the scene and was holding the gun when the fatal shot was fired. The admission of those statements was deemed error, because it was apparent that the defendant would not have taken the stand and made the damaging statements if the coerced confession had not been allowed in evidence.

The present case does not fall within the limited *Harrison* exception, which represents "an extreme situation in which . . . admission of the defendant's coerced confessions . . . virtually coerced the defendant into testifying in his own behalf with self-damaging results," *Commonwealth* v. *Johnson*, 372 Mass. at 193. Admission of the prior assaults at the defendant's first trial may have removed a tactical impediment to the defendant's testimony — the potential use of prior convictions to impeach his credibility — but it did not "virtually coerce" his testimony. See *United States* v. *Mortensen*, 860 F.2d 948, 951 (9th Cir. 1988), cert. denied, 490 U.S. 1036 (1989). Moreover, the portions of his first trial testimony that were put in evidence at the second trial — the workboot and model of car evidence — were unrelated to the evidence of prior assaults that led to reversal of the first conviction.

3. *Other issues.* None of the other issues raised by the defendant requires more than cursory discussion. The officer's description of the footprints in the snow (workboot tracks, one or two sizes larger than his own) and the car tracks (small car) were not improper opinion testimony by a nonexpert witness, but rather were shorthand expressions of his observations, "the subject matter of which [could not] be conveyed to the jury precisely as it appeared to the witness." *Commonwealth* v. *Smith*, 17 Mass. App. Ct. 918, 921 (1983). "It has long been held that summary descriptions of things, if based on the sensory reactions of [persons] in general and not

requiring special learning or experiment, may be admissible as statements of observed facts." *Commonwealth* v. *Tracy,* 349 Mass. 87, 95 (1965). *Commonwealth* v. *Sandler,* 368 Mass. 729, 735-736 (1975).

The judge did not err in refusing the defendant's proffered evidence concerning other sexual assaults on female joggers that had taken place along the banks of the Charles River in Watertown after the defendant's incarceration. The judge conducted a voir dire, receiving testimony of a former assistant district attorney and several police officers who had investigated these incidents. Differences in the times of day of the postincarceration assaults, and in the descriptions of the attackers, coupled with a lack of distinctive similarities in the several incidents, warranted the judge in concluding that they had little probative value to show that the assault on this victim was committed by one other than the defendant. Compare *Commonwealth* v. *Geraway,* 355 Mass. 433, 440-441 (1969); *Commonwealth* v. *Harris,* 395 Mass. 296, 300-301 (1985).

*Judgment affirmed.*