## COMMONWEALTH *vs.* CARL JONES.

No. 02-P-183.

Suffolk. March 5, 2003. - September 4, 2003.

Present: PORADA, SMITH, & CYPHER, JJ.

Further appellate review granted, 440 Mass. 1105 (2003).

*Burning of Property. Practice, Criminal,* Duplicative convictions.

At the trial of indictments charging burning a motor vehicle in violation of G. L. c. 266, § 5, and burning insured property with the intent to defraud an insurer in violation of G. L. c. 266, § 10, the judge did not err in denying the defendant's motion for a required finding of not guilty, where the Commonwealth offered circumstantial evidence establishing that the defendant acted as an accessory before the fact by procuring another to burn his motor vehicle, and where the judge properly resolved an issue of credibility in favor of the Commonwealth. [159-161]

This court explicitly overruled its holding in *Commonwealth* v. *Shuman,* 17 Mass. App. Ct. 441 (1984), and held that a defendant charged with burning a motor vehicle in violation of G. L. c. 266, § 5, and burning insured property with the intent to defraud an insurer in violation of G. L. c. 266, § 10, was properly convicted under both statutes, where each charge required proof of an element that the other did not. [161-163]

COMPLAINT received and sworn to in the Chelsea Division of the District Court Department on August 23, 2000.

The case was heard by *Jonathan Brant,* J.

*Peter J. Perroni* for the defendant.

*Christina E. Miller,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. The defendant, Carl Jones, was convicted after a jury-waived trial of burning a motor vehicle in violation of G. L. c. 266, § 5, and burning insured property with the intent to defraud an insurer in violation of G. L. c. 266, § 10. The defendant appeals, claiming that (1) the trial judge erred in denying the defendant's motion for a required finding of not guilty; and (2) his convictions were duplicative.

1. *Background.* The judge could have found the following

facts. On August 17, 2000, Gregory Brooks, an acquaintance of the defendant, arrived at the defendant's place of work. The defendant told Brooks that he wanted his car to "disappear." Brooks told the defendant that he would take the defendant's car to North Carolina and blow it up in a parking lot. The defendant and Brooks went to a local bank, where the defendant gave Brooks $50 for gas and other expenses as well as the keys to the car. Brooks told the defendant he would leave for North Carolina on Thursday, and would call him the following day.

The defendant wanted Brooks to dispose of his car so that he could file a false insurance report. He planned to use the money collected from his insurance policy to pay off his debts and purchase a less expensive car.

On August 20, 2000, Deputy Chief Doherty of the Revere fire department responded to a report of an incident at the rear of the Garfield School in Revere. Upon arrival, the deputy chief saw a vehicle parked adjacent to the school with "obvious burn or char of the rear quarter driver side of the vehicle in the vicinity of the . . . fuel tank." A partially burned cloth rag was on the ground below the tank door area. After he "eliminated all the other areas of possible, accidental or . . . mechanical malfunctions," he determined that the vehicle had been intentionally burned.

After an investigation, the Revere police apprehended Brooks, as well as two accomplices. Brooks was charged with burning of a motor vehicle, burning with the intent to defraud an insurer, and conspiracy.

On August 21, 2000, the defendant called the Boston police to ask how to report his car stolen. That same day, Brooks telephoned the defendant from the Nashua Street jail and told him that he had blown up the car. On August 22, 2000, the defendant went to the Roxbury police station to report his car stolen. An officer told him that his car was in Revere and that he would have to go there. On August 23, 2000, the defendant went to the Revere police station to report his car stolen.

On August 24, 2000, a police officer met the defendant at the defendant's place of work. The officer told the defendant that he was investigating a motor vehicle fire involving the defen-

dant's motor vehicle and that there was a warrant for the defendant's arrest. The officer and the defendant proceeded to the police station.

At the station, the defendant initially denied all involvement with the disappearance of his motor vehicle. An officer confronted the defendant and accused him of being involved with the disappearance. The defendant initially denied the accusation. Shortly thereafter, however, the defendant asked if he was going to be charged with arson and what was going to happen to him. He then told the officer that he "just wanted his car to disappear." The defendant then stated that he wished to "correct . . . some statements that he made . . . from the prior interview," and he "admitted to the facts that he had . . . involvement in . . . his motor vehicle['s] . . . disappear[ance]."

The defendant then made another statement in which he admitted that he had hired Brooks to make his car disappear and that Brooks had told him he would blow it up after taking it to North Carolina. The defendant stated he had told Brooks not to blow up or to burn the car, but just to "stash" it in North Carolina. The defendant made a third statement in which he apologized for not telling the whole truth to the officers.

2. *Discussion.* a. *Motion for required finding of not guilty.* Following the close of the Commonwealth's case, and again after the close of evidence, the defendant moved for a required finding of not guilty. The court denied both motions. The defendant claims that the judge committed error because there was no evidence introduced that he intended to burn the motor vehicle or that he had an agreement with another to burn the motor vehicle.[1]

We consider the evidence up to the time the Commonwealth

---

[1]The defendant also argues that it was error to deny the motion for required finding of not guilty as no evidence was introduced by the Commonwealth connecting the defendant to the motor vehicle. This argument is without merit, as there was sufficient evidence on this point. The defendant admitted that the keys to the gray Acura Legend automobile that he had given to Brooks belonged to him. The Commonwealth presented pictures of the defendant's motor vehicle, which matched the defendant's description of his motor vehicle. The defendant attempted to file a police report and an insurance claim based on the disappearance of the automobile.

rested its case and the defendant first moved for a required finding of not guilty, *Commonwealth* v. *Cardenuto*, 406 Mass. 450, 454 (1990), and in the light most favorable to the Commonwealth to determine "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Cordle*, 412 Mass. 172, 175 (1992). A conviction may rest entirely on circumstantial evidence, but no essential element may rest on surmise, conjecture or guesswork. See *Commonwealth* v. *Donovan*, 395 Mass. 20, 25 (1985). Applying these standards, we conclude that there was legally sufficient evidence to convict the defendant of burning a motor vehicle.

To obtain convictions under G. L. c. 266, § 5, the Commonwealth was required to prove that the defendant had procured the burning of his automobile. See G. L. c. 266, § 5. By procuring another to commit a felony, the defendant became an accessory before the fact. See *Commonwealth* v. *Raposo*, 413 Mass. 182, 184-185 (1992) (accessory before the fact requires "association with the criminal venture and any significant participation in it").

The Commonwealth offered circumstantial evidence that the defendant procured another to burn his motor vehicle, specifically, that he paid Brooks to get rid of his car; that Brooks proposed blowing up the car; that the defendant accepted Brooks's proposal by giving Brooks the keys to the car and money, while knowing that burning was possible; and that Brooks did burn the car in attempt to blow it up. Cf. *Commonwealth* v. *Murphy*, 1 Mass. App. Ct. 71, 76-77 (1973) (where defendant knew of felony but did not aid in accomplishing felony, conviction could not stand).

Moreover, after Brooks telephoned the defendant to inform him that the car had been "blown up," the defendant continued his scheme and made separate attempts to file a false insurance claim and to file a false police report claiming that his car had been stolen. The defendant, upon initial questioning, asked whether he would be charged with arson, indicating his awareness that the car, in fact, had been burned. The defendant admitted to the investigators that he had asked Brooks to dispose of the car so he could claim the insurance proceeds to pay off debt

and to buy a less expensive car. See *Commonwealth* v. *Walter*, 10 Mass. App. Ct. 255, 259-260 (1980) (circumstantial evidence supporting conviction was based in part on defendant's filing of inflated insurance claim, personal financial gain from fire, and misleading police in their investigation); *Commonwealth* v. *Ward*, 14 Mass. App. Ct. 37, 40-41 (1982) (circumstantial evidence supported conviction for arson where fire was intentionally set, defendant lied to investigators when he denied he burned room, and defendant received financial benefit from fire); *Commonwealth* v. *Mezzanotti*, 26 Mass. App. Ct. 522, 525 (1988) (proof of arson is usually based on circumstantial evidence). Such circumstantial evidence established the defendant's guilt of procuring the burning of his motor vehicle pursuant to the theory that he acted as an accessory before the fact.

The defendant also argues that because he allegedly stated to Brooks that he did not want the car to be burned, his convictions cannot stand. When considering a motion for a required finding of not guilty, issues of credibility are resolved in favor of the government. *Commonwealth* v. *Elliffe*, 47 Mass. App. Ct. 580, 584 (1999). In any event, the judge, who was the fact finder here, specifically stated that he disbelieved the portion of defendant's statement in which the defendant attempted to claim that he did not want the motor vehicle burned.[2]

There was no error in denying the defendant's motion for required finding of not guilty.

b. *Duplicative convictions.* Relying on *Commonwealth* v. *Shuman*, 17 Mass. App. Ct. 441, 449 (1984), the defendant argues that his convictions for arson of a motor vehicle, G. L. c. 266, § 5, and arson with the intent to defraud an insurer, G. L. c. 266, § 10, were duplicative. In *Shuman*, we held that arson of a building, G. L. c. 266, § 2, was a lesser included

---

[2]The judge stated: "So I don't necessarily have to believe the second statement, particularly when it's self-serving on the issue of the burning. I mean there's certainly the suggestion that they [the defendant and Brooks] discussed the, the hiring, that there was a hiring for insurance fraud and one of the possible means of getting rid of the car was burning it in North Carolina. . . . I don't have to believe the statement, well, don't burn it, which is an attempt to disavow not the insurance fraud, but the means by which it was attempted."

offense of arson with the intent to defraud an insurer, despite the fact that these two crimes have mutually exclusive elements.[3] In reaching our decision in *Shuman,* we applied, in essence, the "same evidence" approach, which focuses not only on the elements of the crimes charged, but also on the facts adduced to meet the burden of proof imposed by those elements. See, e.g., *Commonwealth* v. *Catania,* 377 Mass. 186, 191 (1979).[4]

The "same evidence" approach, however, was rejected by the Supreme Judicial Court in *Commonwealth* v. *Crocker,* 384 Mass. 353, 359 (1981), in favor of a strict elements-based approach. Since *Crocker,* this has been the consistent law of the Commonwealth. See *Commonwealth* v. *Valliere,* 437 Mass. 366, 371 (2002). See also *Commonwealth* v. *Buckley,* 410 Mass. 209, 222 (1991); *Commonwealth* v. *Arriaga,* 44 Mass. App. Ct. 382, 386-387 (1998). Under the current rule, "[a]s long as each offense includes an element that the other does not, 'neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature.' " *Commonwealth* v. *Valliere,* 437 Mass. at 371, quoting from *Commonwealth* v. *Jones,* 382 Mass. 387, 393 (1981). The actual criminal acts alleged are wholly irrelevant to application of this standard; rather, the elements of the crimes charged are considered objectively, abstracted from the facts of any particular case. *Ibid.* See *Commonwealth* v. *Crocker,* 384 Mass. at 359.

Applying the elements-based test, we effectively overruled *Shuman* in *Commonwealth* v. *Anolik,* 27 Mass. App. Ct. 701, 712 (1989). In *Anolik,* the defendant was charged with arson of a dwelling, G. L. c. 266, § 1, and arson with the intent to defraud an insurer, essentially the same crimes charged in

---

[3]The former requires proof that the object of the arson was one of a set of defined structures, whereas the latter requires proof of intent to defraud an insurer.

[4]In *Shuman,* the court looked to the defendant's actual conduct in assessing whether, in the circumstances of that case, proof of mutually exclusive elements was required. As the court tellingly concluded, "at least upon the record before us, one of the two convictions cannot stand." *Commonwealth* v. *Shuman,* 17 Mass. App. Ct. at 451.

*Shuman*.[5] Like here, the defendant in *Anolik* relied on *Shuman* to support the claim that his convictions were duplicative. Citing the mutually exclusive elements of the two offenses,[6] we deemed the multiple convictions in *Anolik* lawful under the reasoning set out in *Crocker*. See *Commonwealth* v. *Anolik*, 27 Mass. App. Ct. at 712. To the extent that the offenses charged here likewise have mutually exclusive elements — § 5 requires proof that an automobile was burned, while § 10 requires proof of intent to defraud an insurer — a consistent result is required.

As an aside, we note that application of the elements-based test leads to no injustice here. Section 5 is aimed at protecting personal property, and embodies a public safety component as well; § 10, by contrast, punishes what is at bottom an economic crime, which has widespread impact among all members of the insurer's risk pool. See *Commonwealth* v. *Crocker*, 384 Mass. at 361 (on different policy bases undergirding larceny by false pretenses and uttering). In any event, both convictions may stand. To the extent that *Shuman* requires a different result, it is overruled.

*Judgments affirmed.*

---

[5] While the defendant in *Shuman* was charged with G. L. c. 266, § 2 (burning of a building), and the defendant in *Anolik* was charged with G. L. c. 266, § 1 (burning of a dwelling), there is no functional difference between these crimes for the purpose of assessing whether either is included within G. L. c. 266, § 10.

[6] Section 1 requires proof that a dwelling was burned; § 10 requires proof of intent to defraud an insurer.