COMMONWEALTH *vs.* TIMOTHY GALLANT.

No. 03-P-255.

Hampden. August 5, 2005. - January 19, 2006.

Present: GELINAS, BROWN, & BERRY, JJ.

*Kidnapping. Attempt. Assault with Intent to Commit a Felony. Practice, Criminal,* Assistance of counsel, Duplicative convictions.

A criminal defendant convicted of attempted kidnapping, assault with intent to commit a felony, and assault and battery failed to demonstrate, in his motion for a new trial, that his counsel had rendered ineffective assistance by failing to seek the exclusion of certain evidence that was admissible as a summary description of the victim's sensory perceptions [410-411]; by introducing brief and ambiguous testimony concerning the defendant's involvement as a suspect in an unrelated rape case [411-412]; or by failing to investigate certain identification [412] and allegedly exculpatory [412-413] evidence.

This court concluded, in conformity with the principles set out in *Morey* v. *Commonwealth*, 108 Mass. 433 (1871), that a criminal defendant's convictions of attempted kidnapping, G. L. c. 274, § 6, and assault with intent to commit a felony, G. L. c. 265, § 29, were not duplicative, even though premised on the same criminal act, where each of the offenses contained an element that the other did not [413-414]; further, this court declined to interpret *Commonwealth* v. *Keohane*, 444 Mass. 563 (2005), as altering this traditional elements-based test [414-417].

INDICTMENTS found and returned in the Superior Court Department on May 31, 2001.

The cases were tried before *Thomas J. Curley, Jr.,* J., and a motion for a new trial, filed on July 21, 2003, was heard by him.

*Barbara J. Sweeney* for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

BROWN, J. After a jury trial in the Superior Court, the defendant was convicted of attempted kidnapping, assault with

the intent to commit a felony (kidnapping), and assault and battery. The defendant appealed and filed a motion for a new trial. In the motion, the defendant also presented additional claims under the rubric of ineffective assistance of counsel. We discern no error.

The defendant's appeal from these convictions would be rather unremarkable, but for the often troublesome question of duplicative convictions. Initially, we will address the core issues raised on appeal in summary fashion, and then treat the defendant's claim of duplicative convictions in more extensive detail.

1. *Ineffective assistance.* The defendant makes a variety of arguments concerning his attorney's purported ineffectiveness. The defendant's trial counsel's performance did not fall below the standard articulated in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), and *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). Nor did the affidavits submitted in support of his motion present any substantial issues that warranted an evidentiary hearing. See *Commonwealth* v. *Savage*, 51 Mass. App. Ct. 500, 505 (2001). It is particularly significant that the defendant has not shown that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield, supra.* We examine each aspect of the defendant's argument in turn.

a. *Victim's testimony.* The victim's testimony was littered with statements to the effect that the defendant had "tried to take" her.[1] On appeal, the defendant argues that defense counsel should have vigorously sought to exclude such similar statements because they constituted impermissible opinion evidence describing the defendant's state of mind, thereby relieving the Commonwealth from having to prove the defendant's intent, an

---

[1]The first time the victim made this statement, it was in the context of what she had told her supervisor, one Teri Thomas, when she arrived at work: "And I said, 'I think somebody just tried to take me.' " The defendant objected, and the objection was overruled. The basis of the objection is not clear from the record, but it seems to have been on hearsay grounds. In any event, similar testimony was repeated in the victim's direct testimony, without objection, and elicited by defense counsel during cross-examination.

element of the two charges involving kidnapping. The argument, however, is flawed because the victim's statement was not an opinion as to the defendant's state of mind or intent.

Summary descriptions based on sensory perceptions have long been admissible in evidence. See *Commonwealth* v. *Robertson*, 357 Mass. 559, 563 (1970); *Commonwealth* v. *Brusgulis*, 41 Mass. App. Ct. 386, 390-391 (1996). Here, the victim's testimony that the defendant had "tried to take" her, viewed in context, is merely a summary description of the specific amount, type, and degree of force she believed the defendant was exerting upon her when he grabbed her.[2] The remark also undoubtedly incorporates her observations or perceptions of events that preceded the contact, including a van circling her and stopping, and the defendant driver getting out of the vehicle and staring at her in a manner that made her very fearful.[3]

In any event, even if we were to conclude that counsel could have successfully sought the exclusion of such evidence, his failure to do so did not deprive the defendant of an otherwise available defense.[4] Evidence of the assailant's intent was not relevant to either of the defense's dual theories of misidentification or fabrication. Cf. *Commonwealth* v. *Carroll*, 439 Mass. 547, 553 (2003) (where excluded evidence was not relevant to any "live issue" at trial, no abuse of discretion).

b. *Evidence of an unrelated rape*. The defendant also argues that his attorney's performance was deficient because he elicited testimony that the defendant was a suspect in an unrelated rape case. While counsel's conduct in eliciting this evidence was

---

[2]It should be noted that in view of the strength of the Commonwealth's case and the cumulative nature of the evidence, it cannot fairly be said that those brief portions of the lengthy cross-examination and recross-examination of the victim deprived the defendant of an otherwise available, substantial ground of defense. See *Commonwealth* v. *Saferian, supra*.

[3]We note in passing that although there was only minor physical contact, the evidence, particularly the victim's testimony viewed in its totality, provides a sufficient basis for finding that the defendant intended to kidnap the victim.

[4]That the victim was describing the nature of the defendant's conduct, rather than his intent, is further supported by her subsequent testimony, in which she made clear that, "I'm not him. I'm not in his head. I don't know what *he* was thinking. . . . I don't know what he *was* intending to do." (Emphasis added.)

troubling, it is not the type of conduct that decisional law typically views as "manifestly unreasonable." See *Commonwealth v. Adams,* 374 Mass. 722, 728-729 (1978). In order to reach that threshold, counsel's conduct must have deprived the defendant of a significant defense. See *Commonwealth* v. *Saferian,* 366 Mass. at 96.

Here, the introduction of the evidence related to the other rape was brief and Officer O'Toole's testimony was ambiguous. Moreover, the prosecutor did not mention the unrelated rape, but emphasized, instead, the victim's observations and experiences, her identification, and the defendant's reluctance to speak with police after the incident.

c. *Defendant's T-shirt.* The defendant faults his attorney for failing to discover that the defendant's T-shirt had writing on the front of it and, in turn, for failing to cross-examine the victim on this point in view of her description of the assailant as wearing a "maroon T-shirt with no writing on it." Even assuming that counsel's conduct established the first *Saferian* prong, better work would have added little heft to the defendant's case. The victim's description of her assailant was detailed and matched the defendant's appearance. The license plate number she gave to the police was registered to a van owned by the defendant, and the defendant's van matched the description of the van she had seen during the incident. Taken together, lettering on the T-shirt was a minor variation that would not have undercut the other significant identification evidence. Moreover, as the Commonwealth argues, reference to the T-shirt would only have highlighted and corroborated the victim's testimony that the shirt was maroon.

d. *Second white van.* The defendant also argues that counsel failed to investigate the presence of another van in the area that day. According to the defendant, had trial counsel properly investigated the presence of this other van, he would have uncovered this "exculpatory evidence." The defendant, however, has failed to demonstrate, as is required, how the presence of another white van in the area would have been a real factor in the jury's deliberation, given the evidence that the

victim had memorized the license plate number of the defendant's van.[5]

2. *Duplicative convictions.* The defendant alleges that his convictions for attempted kidnapping, G. L. c. 274, § 6, and assault with intent to commit a felony, G. L. c. 265, § 29, are duplicative. To the extent that both are indisputably premised on the same act, he argues that the judgment on the lesser offense, attempted kidnapping,[6] must be dismissed. We disagree.

The defendant acknowledges that each of the offenses contains an element that the other does not. Specifically, assault with intent to commit a felony requires proof of an assault, see *Commonwealth* v. *Gorassi*, 432 Mass. 244, 247-248 (2000); attempted kidnapping requires proof of some overt act aimed at accomplishing a kidnapping, see *Commonwealth* v. *Dixon*, 34 Mass. App. Ct. 653, 655 (1993). In these circumstances multiple convictions are appropriate, even though premised upon the same criminal act.

In Massachusetts, the standard for determining whether multiple convictions based upon a single act are duplicative was first delineated in *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871), and remains unchanged to this day. Consistent with *Morey*, "a defendant may properly be punished for two crimes arising out of the same course of conduct provided that each crime requires proof of an element that the other does not." *Commonwealth* v. *Jones*, 441 Mass. 73, 74-75 (2004), quoting from *Commonwealth* v. *Valliere*, 437 Mass. 366, 371 (2002). In assessing whether convictions based on the same conduct are duplicative, the Supreme Judicial Court recently observed, "the actual criminal acts alleged are wholly irrelevant . . . rather, the elements of the crimes charged *are considered objectively, abstracted from the facts*" (emphasis added). *Commonwealth* v. *Jones, supra* at 76, quoting from *Commonwealth* v. *Jones*, 59 Mass. App. Ct. 157, 162 (2003). Applying this standard, multiple convictions based on the same act have been approved in a

---

[5]The defendant's claim that the Commonwealth withheld exculpatory evidence is likewise unavailing.

[6]We assume, arguendo, that attempted kidnapping is the lesser offense here based on the statutory penalty range for the two crimes charged.

large number of prior cases.[7] See, e.g., *Commonwealth* v. *Buckley*, 410 Mass. 209, 222-223 (1991); *Commonwealth* v. *Charles*, 428 Mass. 672, 683 (1999); *Commonwealth* v. *Jones*, 441 Mass. at 75-76; *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. 382, 386-387 (1998); *Commonwealth* v. *Diaz*, 53 Mass. App. Ct. 209, 211-212 (2001).

In an attempt to avoid the outcome mandated by *Morey*, the defendant directs us to language in *Commonwealth* v. *Keohane*, 444 Mass. 563, 575 (2005): "the judge may determine whether the actions of a defendant are so closely related in fact as to constitute in substance but one crime." He suggests that *Keohane* imposes additional limits, beyond those stated in *Morey*, on the circumstances in which multiple convictions may be premised upon a single act. The defendant's argument, however, misses the mark.

In the first instance, the "so closely related in fact as to constitute in substance but one crime" standard has been applied more or less exclusively in situations where the disputed issue was how many discrete criminal acts a defendant had committed (i.e., whether a flurry of blows constitutes a single battery or several discrete batteries) — not in cases involving the question whether multiple convictions indisputably based on a single act were permissible. See, e.g., *Commonwealth* v. *Sanchez*, 405 Mass. 369, 381-382 (1989); *Commonwealth* v. *Mamay*, 407 Mass. 412, 418-419 (1990); *Commonwealth* v. *Maldonado*, 429 Mass. 502, 509-510 (1999).[8] Further, and more important, it is difficult to see how such a conduct-based test could ever possibly mesh with the *Morey* standard. As indicated,

---

[7]Where convictions are based on *distinct* acts, it is unnecessary even to consider whether the offenses contain mutually exclusive elements; multiple punishments are authorized in any event. See *Commonwealth* v. *Thomas*, 401 Mass. 109, 119-120 (1987).

[8]Recently, in *Commonwealth* v. *Howze*, 58 Mass. App. Ct. 147, 149-153 (2003), we applied the "so closely related in fact" standard in determining that a defendant could not be convicted of indecent assault and battery and rape where the former charge was based on the removal of the victim's clothing. As we stated in *Howze*, "the act of removing the victim's clothing was sufficiently bound up with and necessary to the act of penetration that due process forbids separating the conduct into discrete units for prosecution." *Id.* at 153. It is in this context that the "so closely related in fact" standard properly may be applied.

the *Morey* rule *only* applies to situations in which two or more convictions arise out of precisely the same act, let alone acts "closely related in fact." Thus, if *Keohane* were read, as the defendant suggests, to bar multiple convictions in situations where the acts supporting alleged duplicative convictions were "closely related in fact," the *Morey* standard would be rendered wholly superfluous. Multiple convictions would *never* be allowed based on a single act, regardless of whether the offenses at issue had mutually exclusive elements. This was not the holding of *Keohane*.

In concluding that the defendant's acts in *Keohane* were not "so closely related in fact as to constitute but a single offense," the court expressly relied on the fact that "each offense includes an element that the other does not" — i.e., the court reiterated the elements-based *Morey* standard. See *Commonwealth* v. *Keohane*, 444 Mass. at 574-575. While not expressly stated, the Supreme Judicial Court's approach appears to indicate that the *Morey* rule, with its strict focus on elements, renders any conduct-based inquiry irrelevant; that is to say, provided the *Morey* test is satisfied, no inquiry into a defendant's conduct is required. Such an interpretation conforms to the aforementioned admonition in *Jones*: "[In determining whether convictions based upon a single act are duplicative,] the elements of the crimes charged are considered objectively, abstracted from the facts." *Commonwealth* v. *Jones*, 441 Mass. at 76, quoting from *Commonwealth* v. *Jones*, 59 Mass. App. Ct. at 162.

Alternately, *Keohane* may be read to stand for the simple proposition that application of a conduct-based standard may, in appropriate circumstances, provide a basis for avoiding application of the *Morey* test altogether. Where convictions are based on *distinct* acts, it is unnecessary even to consider whether the offenses contain mutually exclusive elements; multiple punishments are authorized in any event. See *Commonwealth* v. *Thomas*, 401 Mass. 109, 119-120 (1987). Such an interpretation of *Keohane* is supported by the fact that the Supreme Judicial Court, by way of alternative support for its conclusion that the convictions there were not duplicative, observed that "[t]he two

offenses also differ in fact because the armed assault offense involves a breaking and entering that is distinct from the murder." *Commonwealth* v. *Keohane*, 444 Mass. at 575.

This view of *Keohane* — i.e., that the reference to the conduct-based standard was merely offered as an independent and alternative basis[9] for the disposition in a case that arguably involved multiple convictions based on *separate* acts — is supported by a number of subsequent decisions. In a trio of recent cases, *Commonwealth* v. *Rivera*, 445 Mass. 119, 132 (2005); *Commonwealth* v. *Pillai*, 445 Mass. 175, 193 (2005); *Commonwealth* v. *King*, 445 Mass. 217, 225 (2005), all decided after *Keohane*, the "so closely related in fact as to constitute in substance but one crime" standard is applied *exclusively* for the purpose of determining how many discrete criminal acts a defendant committed. See, e.g., *Commonwealth* v. *Constantino*, 443 Mass. 521, 526-527 (2005) (elements-based standard applied to question of duplication where multiple convictions are based upon single act). In view of the basic incompatibility of the "so closely related in fact" standard with the *Morey* rule, as well as the recent emphatic affirmation of *Morey* in *Jones*, the ongoing strict division of these related but separate doctrines is unsurprising.[10] In any event, *Keohane* does not expressly alter the traditional elements-based test for determining whether multiple convictions based on a single act are duplicative, and we do not elect to impose such a reading onto the case.

Accordingly, we conclude that, in conformity with the

---

[9]As noted in *Commonwealth* v. *Pileeki*, 62 Mass. App. Ct. 505, 514-521 (2004) (Brown, J., concurring), the use of such a "belt and suspenders approach to rebutting claims of duplicative convictions" is by no means unprecedented. In *Commonwealth* v. *Wolinski*, 431 Mass. 228, 238-239 (2000), for example, the Supreme Judicial Court first employed the *Morey* test for the purpose of determining that the crimes charged had mutually exclusive elements, and so multiple convictions based on a single act would be permissible. Then the court proceeded to observe that, in any event, the convictions could be pegged to separate acts, and so would have been lawful even if the underlying offenses had not had mutually exclusive elements.

[10]We reject the defendant's implicit suggestion that the Supreme Judicial Court intended the phrase "so closely related in fact as to constitute but one crime" to have different meanings in different contexts.

principles set out in *Morey*, the convictions here are not duplicative.[11]

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

---

[11]We note as an aside that, as a rule, the *Morey* standard produces common-sense results. Here, for example, it is by no means unreasonable to assume that the Legislature would have intended to punish separately both the assault on the victim and the attempted kidnapping. The offenses are both logically separate and addressed to different types of harm. Needless to say, the mechanical rule of *Morey*, in truly extraordinary cases, may require the application of some degree of flexibility. For example, in cases where two offenses have but "small technical differences in their statutory elements," they might be deemed duplicative, at least where convictions on both are based upon a single act, *Morey* notwithstanding. See *Commonwealth* v. *Pileeki*, 62 Mass. App. Ct. at 519 (Brown, J., concurring). Cf. *Kuklis* v. *Commonwealth*, 361 Mass. 302, 308 (1972) (separate convictions not permitted for being present where marijuana is kept and possession of marijuana). Such an approach was adopted, for example, in *Costarelli* v. *Commonwealth*, 374 Mass. 677, 684 (1978), and, more recently, in *Commonwealth* v. *Walker*, 426 Mass. 301, 304-305 (1997). However, in both those cases, the crimes were deemed duplicative, despite mutually exclusive elements, *solely* on the basis of their elements, "abstracted from the facts" of the cases. *Commonwealth* v. *Jones*, 441 Mass. at 76, quoting from *Commonwealth* v. *Jones*, 59 Mass. App. Ct. at 162. The underlying facts are simply irrelevant to the question of duplication where only a single act is involved.